UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARTHUR A. MURATOVIC, | CIVIL NO. 3:12-CV-0124 |
| Petitioner, | (Judge Mariani) |
| v. | |
| JANET NAPOLITANO, et al., | |
| Respondents. | |

## MEMORANDUM

### I.     Introduction

This case involves a habeas corpus petition filed by Arthur Muratovic, a native of the former Yugoslavia, a citizen of Montenegro, and a previously convicted drug trafficker who was ordered removed from the United States in October of 2011. Muratovic, who has remained in the custody of the United States Immigration and Customs Enforcement ("ICE") Office for approximately 135 days pending his removal from the United States, has now filed a Petition for Writ of Habeas Corpus ("Petition") seeking immediate release from immigration custody. (Doc. 1.) Because we find that Muratovic's current post-removal detention is specifically authorized by statute and falls well within the presumptively reasonable six (6) month period prescribed by the United States Supreme in Zadvydas v. Davis, 533 U.S. 678 (2001), we believe–at present–that Muratovic's continued detention is justified. Accordingly, the Petition will be denied without prejudice.

## II. Factual Background

On February 19, 1974, Arthur Muratovic, a native of Yugoslavia and a citizen of Montenegro, entered the United States as a refugee. (Doc. 6, Ex. A, Notice to Appear.) Eight (8) years later, on July 9, 1982, Muratovic's immigration status was adjusted to that of a Lawful Permanent Resident Alien. (Id.)

On January 8, 2007, Muratovic was convicted in the United States District Court for the District of New Jersey on charges of Conspiracy to Possess with Intent to Distribute Oxycodone. (Id.) Muratovic was sentenced to sixty-five (65) months imprisonment following this federal drug trafficking conviction. (Id.) On January 26, 2009, while Muratovic was serving this federal sentence, he was placed on notice that he was subject to deportation and removal from the United States when immigration officials issued a Notice to Appear against him, charging Muratovic with being deportable under section 237(a)(2)(A)(III) of the Immigration and Naturalization Act ("INA"). (Id., p. 2.) Specifically, Muratovic was identified as a person convicted of an aggravated felony drug trafficking offense in that he was convicted of an offense relating to the illicit trafficking and conspiracy to illegally traffic controlled substances. (Id.) This Notice to Appear also charged that Muratovic was subject to removal from the United States under Section 237(a)(2)(B)(I) of the Immigration and Naturalization Act, based upon his conviction of a violation of a law related to a controlled substance. (Id.)

Initially, on May 27, 2010, Muratovic's removal case was administratively closed while he served this criminal sentence. (Id., Ex. B, May 27, 2010 IJ Order.) However, on September 21,

2

2011, Muratovic's immigration proceedings were re-instituted after Muratovic was released from his federal sentence to immigration custody. (Id., Ex. C, Sept. 21, 2011 IJ Order.) Less than one (1) month later, on October 17, 2011, the Immigration Court ordered Muratovic removed from the United States. (Id., Ex. D, Oct. 17, 2011, IJ Order.) At this proceeding, Muratovic waived his right to appeal this removal order. Thus, his removal order became administratively final on October 17, 2011. (Id.)

Muratovic has remained detained in immigration custody since this final removal order was entered against him in October of 2011. On January 11, 2012, Muratovic was served with a Decision to Continue Detention, in which immigration officials expressed their continuing intention to hold Muratovic pending his removal form the United States. (Id., Ex. E, Decision to Continue Detention.) At that time, Muratovic was also advised that if he was not removed from the United States by April 15, 2012, his case would be transferred to the Headquarters Case Management Unit, who would make a determination regarding his custody. (Id.)

Dissatisfied with this continued detention, on January 23, 2012, Muratovic filed the instant Petition with this Court challenging his continued detention by ICE. (Doc. 1.) The Petition raises a single, narrow claim. Relying upon the Supreme Court's decision in Zadvydas, 533 U.S. 678, Muratovic alleges that his current four (4) month post-removal detention is excessive and unconstitutional. (Id. at 2.) The United States has filed a Response to the Petition (Doc. 6), which contends that Muratovic's current post-removal detention is mandated by law, and does not presently offend the due process limitations established by the Supreme Court in Zadvydas. This

3

matter has been fully briefed by the parties and now is ripe for resolution. For the reasons set forth below, we conclude that Muratovic's current post-removal detention is specifically authorized by statute and falls well within the presumptively reasonable 6-month period prescribed by the United States Supreme Court in Zadvydas, and therefore, his Petition will be denied as premature.

### III. Discussion

In this case, Muratovic's order of removal became final on October 17, 2011 after he waived his appellate rights relating to that order. As an alien under a final order of removal, Muratovic's detention now is governed by a set of statutory and constitutional rules. First, by statute, aliens like Muratovic, who are subject to final removal orders, may be detained under 8 U.S.C. § 1231(a), which directs the Attorney General to remove such aliens within ninety (90) days of the entry of a removal order. 8 U.S.C. § 1231(a)(1)(A). The statute then commands that "[d]uring the removal period, the Attorney General shall detain the alien", 8 U.S.C. § 1231(a)(2), and with respect to criminal recidivist aliens like Muratovic, specifically provides that, "[u]nder no circumstance during the removal period shall the Attorney General release an alien who has been found ...deportable under section 1227(a)(2) ... of this title." 8 U.S.C. § 1231(a)(2). For purposes of our analysis of any post-final order period of detention, this statutory ninety (90) day "removal period" during which detention is mandatory begins on the date the order of removal becomes administratively final. See 8 U.S.C. § 1231(a)(1)(B)(i).

In this case, Muratovic has been held for approximately 135 days since his removal order became administratively final. Of this brief period of detention, the initial ninety (90) days of

4

detention were not only authorized by law, but actually were compelled by the statute. 8 U.S.C. § 1231(a)(2). As for Muratovic's remaining, current, brief term of post-removal detention, nothing about this on-going detention presently violates his constitutional rights.

For aliens awaiting removal, like Muratovic, the contours of those rights are now defined by the United States Supreme Court's decision in Zadvydas in which the Court extended due process protections to aliens awaiting removal from the United States, while generally sustaining the validity of the initial mandatory detention period for such aliens during the ninety (90) day removal period prescribed by 8 U.S.C. § 1231(a)(1)(A). Beyond this initial ninety (90) day period, the Court concluded that: "we think it practically necessary to recognize some presumptively reasonable period of detention." Id. at 701. The Court then observed as follows:

> While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months . . . . Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701.

Taken together, 8 U.S.C. § 1231(a)(1)(A) and Zadvydas create a statutory and

5

constitutional framework for protecting the rights of aliens who are detained pursuant to administratively final removal orders. Under this framework, such aliens shall be detained for the first ninety (90) days of the removal period and further detention beyond this ninety (90) day period will be presumed reasonable up to a period of six (6) months, at which time aliens subject to final removal orders must either be removed, or be given bail consideration.

However, when calculating these detention periods for purposes of analyzing post-removal delay claims brought by immigration detainees, two principles must be kept in mind. First, delays attributable to the recalcitrance of the immigration detainee, and his refusal to cooperate with immigration officials, are not to be considered by the courts in making these determinations regarding whether a detainee has experienced excessive delays in deportation. Thus, where an alien refuses to cooperate with the authorities in affecting his removal, he cannot cite the delay in removal which he caused as grounds for habeas relief. As this court has observed:

> [A]n 'alien cannot assert a viable constitutional claim when his indefinite detention is due to his failure to cooperate with the INS's efforts to remove him.' Pelich v. I.N.S., 329 F.3d 1057, 1061 (9th Cir. 2003). In that case, the Court determined that the continued detention of the alien was due to his own conduct: . . . Thus, the Ninth Circuit has interpreted INA § 241(a)(1)(C) after Zadvydas to permit continued detention of a removable alien 'so long as the alien fails to cooperate fully and honestly with officials to obtain travel documents.' Lema v. INS, 341 F.3d 853, 857 (9th Cir. 2003).
>
> Similarly, district courts to consider this issue ask whether the petitioner has the 'keys to his freedom,' Pelich, 329 F.3d at 1060, to determine whether he is preventing his own removal pursuant to INA § 241(a)(1)(C). See, e.g., Clark v. Ashcroft, No. 03-3320, 2003 WL 22351953 at *3-4 (E.D.Pa. Sept. 16, 2003)(alien initially misrepresented his country of origin, but later gave his true name and identity; the government showed no evidence of non-cooperation since that time); Rajigah v. Conway, 268 F.Supp.2d 159, 165-66

6

(E.D.N.Y.2003) (finding no bad faith failure to cooperate where alien made truthful statements to Guyanese ambassador regarding his intent to file another court action, which the government considered failure to comply); Seretse-Khama v. Ashcroft, 215 F.Supp.2d 37, 51-53 (D.D.C.2002) (alien's truthful statements to Liberian officials that he did not wish to return to Liberia did not amount to bad faith failure to cooperate since it was not the reason for failure to issue travel documents; rather, it was their concern for his lack of ties to that country); Powell v. Ashcroft, 194 F.Supp.2d 209, 210 (E.D.N.Y.2002) (repeated inconsistencies regarding alien's identity 'demonstrably hampered the INS in carrying out his removal'). Thus, this Court must carefully examine the record to determine Petitioner's part in his continued detention.

Abdel-Muhti v. Ashcroft, 314 F.Supp.2d 418, 427-28 (M.D. Pa. 2004)

In addition, cases construing Zadvydas recognize that the presumptively reasonable six (6) month detention period described by the Supreme Court is just that–a presumptively reasonable period of detention. It is not an ironclad time frame within which aliens must be removed, or released. Moreover, echoing the Supreme Court's observation that "[t]his 6-month presumption, of course, does not mean that every alien not removed must be released after six months," id. at 701, courts have concluded that an alien who has been held longer than six (6) months awaiting removal still bears an initial burden of proof to secure release pending removal. In such instances, "in order to state a claim under Zadvydas the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002). See, e.g., Rodney v. Mukasey, 340 Fed. Appx. 761, 764 (3d Cir. 2009); Encarnacion-Mendez v. Attorney General, 176 Fed. Appx. 251, 254 (3d Cir. 2006); Joseph v. United States, 127 Fed. Appx. 79, 81 (3d Cir. 2005). In instances where an

7

alien is unable to produce evidence demonstrating good cause to believe that there is no significant likelihood of removal in the reasonably foreseeable future, courts have frequently sustained continuing periods of detention pending removal well beyond the six (6) month time frame described as presumptively reasonable by the Supreme Court in Zadvydas, reasoning consistent with Zadvydas that: "[t]his 6-month presumption, . . ., does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701.

While this legal framework affords substantial protections to aliens, like Muratovic, who are subject to final removal orders, application of these legal standards to this case provides no grounds for affording habeas relief to Muratovic at this time. His removal order became final on October 17, 2011 when he waived his appeal rights. Thereafter, he was subject to the first ninety (90) day mandatory detention period set by statute, 8 U.S.C. § 1231(a)(2), and his post-removal detention falls well within the six (6) month presumptively reasonable time frame defined by the Supreme Court in Zadvydas.

On these facts, we find that Muratovic simply has not made a valid claim that he has been subjected to an unconstitutionally excessive period of post-removal delay. Indeed, far from being unconstitutionally excessive, the current post-removal detention falls within periods sanctioned by statute and by the Supreme Court. Therefore, this brief detention does not raise concerns of constitutional dimension warranting habeas relief at this time. See Hendricks v. Reno, 221 Fed.

Appx. 131 (3d Cir. 2007)(affirming denial of habeas petition where court found delay from date of administratively final deportation order was less than ninety (90) days).

## IV. Conclusion

For the reasons set forth in this Memorandum, Muratovic's Petition is prematurely before this Court and will be dismissed without prejudice to renewal at such time, if any, that the delay and detention may become unreasonable and excessive. An appropriate Order follows.

Robert D. Mariani
United States District Judge

THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ARTHUR A. MURATOVIC          :
                             :
              Petitioner     :
      v.                     :   3:12-CV-124
                             :   (JUDGE MARIANI)
JANET NAPOLITANO, et al.,    :
                             :
              Respondents    :

## ORDER

**AND NOW, THIS 8TH DAY OF MARCH, 2012,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT** as follows:

1. Petitioner's Motion for leave to proceed *in forma pauperis* (Doc. 2) is **GRANTED.**

2. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED.**

3. The Clerk of Court shall **CLOSE** this case.

Robert D. Mariani
United States District Judge